**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ASHLEY W., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-25-902 |
| FRANK J. BISIGNANO,<br>  Commissioner of Social Security,[1] | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM OPINION**

On March 19, 2025, Plaintiff Ashley W. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claims for benefits. ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[2]  28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the Court is Plaintiff's appeal (ECF No. 12), which is fully briefed (ECF Nos. 14–15).  No hearing is necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

## I.    BACKGROUND

### A.    Procedural History

In 2021, Plaintiff filed an application for Supplemental Security Income under Title XVI

---

[1] On March 19, 2025, Plaintiff filed this case against Leland Dudek, who was then the Acting Commissioner of Social Security.  ECF No. 1.  Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano has been substituted as Defendant after he became the Commissioner.  *See* https://perma.cc/NA2P-W24T (last visited March 2, 2026).

[2] This case was reassigned to the undersigned on January 8, 2026.

of the Social Security Act (the Act), 42 U.S.C. § 301 *et seq.*, alleging a disability onset date of March 1, 2004.  ECF No. 8-6 at 5.[3]  Plaintiff claims she is disabled within the meaning of the Act because she is unable to work due to bipolar disorder, major depressive disorder, generalized anxiety disorder, and a trauma and stress related disorder.  ECF No. 12 at 5.  The SSA denied Plaintiff's application for benefits on January 25, 2022.  ECF No. 8-5 at 2.  On February 9, 2022, Plaintiff sought reconsideration, and the SSA affirmed its initial decision.  *Id.* at 7, 14.  On March 2, 2023, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on January 30, 2024.  *Id.* at 17; ECF No. 8-3 at 182.  The ALJ rendered a decision on March 18, 2024, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-3 at 20.  On April 25, 2024, Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on January 31, 2025.  ECF Nos. 8-5 at 70–71; 8-3 at 2.  The ALJ's March 18, 2024 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 422.210(a).

**B.    Statutory Framework**

The Social Security Act authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[4]  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  The Act defines disability as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4]  "The Social Security Act comprises two disability benefits programs: the Social Security Disability Insurance Program, which provides benefits to disabled persons who have contributed to the program while employed, and the Supplemental Security Income Program, which provides benefits to indigent disabled persons."  *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017).

months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).  To receive the requested benefit under the SSA, "a plaintiff has the burden of proving disability." *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th Cir. 2021).  Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant does not carry their burden at the third step of the sequential evaluation, the ALJ must then assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. § 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most you can still do despite your [physical and mental] limitations." 20 C.F.R. § 416.945.  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)).  "Only after

such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 416.920(e); *Monroe*, 826 F.3d at 179-180.

### C.        The ALJ's Decision

At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. ECF No. 8-3 at 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder, major depressive disorder, generalized anxiety disorder, and a trauma and stress related disorder." *Id.* (bold removed). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 26 (bold removed). Before continuing to the fourth step, the ALJ determined that plaintiff retained the residual functional capacity to "perform medium work as defined in 20 CFR 416.967(c)," with certain exceptions. *Id.* at 27 (bold removed). At the fourth step, the ALJ determined that Plaintiff has no past relevant work. *Id.* at 31. Lastly, at the fifth step, the ALJ determined that because there are jobs that exist in the national economy that Plaintiff can perform, Plaintiff is not "under a disability" as defined in the Act, and the SSA properly denied her application for benefits. *Id.* at 30–31 (bold removed).

## II.    DISCUSSION

On appeal, Plaintiff contends that the ALJ's residual functional capacity finding is deficient because it did not incorporate an assessment of her mental limitations. ECF No. 12 at 7–15. The Commissioner argues the opposite. ECF No. 14 at 6–7, 10–11. The parties' arguments, together with the applicable standard of review, are addressed below.

A.    **Standard of Review**

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt*, 860 Fed. Appx. at 259 (citing 42 U.S.C. § 405(g)).[5]  The Court must affirm the decision "so long as the agency applied correct legal standards and factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 386 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in

---

[5]  After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. §405(g).  42 U.S.C. § 1383(c)(3).

crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."  *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

## B.    Non-Severe Mental Impairments and Residual Functional Capacity

As noted, *see*, I.B., *supra*, an ALJ determines if a claimant suffers from a severe impairment at step two of the disability evaluation.  *Hancock*, 667 F.3d at 472.  An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  Federal regulations require an ALJ to evaluate the severity of mental impairments by assessing limitations in four "paragraph B" functional areas: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself."  *Josiah T.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3572, 2022 WL 684944, at *3 (D. Md. Mar. 8, 2022) (citing 20 C.F.R. § 416.920a(c)(3)).

The severity determination at step two is distinct from the assessment of residual functional capacity, which occurs after step three.  *E.g.*, *Anthony M.*, 2020 WL 434581, at *3 (explaining that "the limitations identified in the 'paragraph B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted).  "When

an individual is not engaging in substantial gainful activity and a determination [regarding eligibility for benefits] . . . cannot be made on the basis of medical factors alone . . . , the sequential evaluation process generally must continue with an identification of the individual's functional limitations . . . and an assessment of his or her remaining capacities for work-related activities." SSR 96-8p, at 61 Fed. Reg. 34,475. The latter part of this analysis is expressed as a claimant's residual functional capacity, which is the most the claimant can do in a work setting on a regular and continuing basis despite any impairments or related symptoms. *Id.*; 20 C.F.R. § 416.945; *see also* I.B, *supra*.

A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis." SSR 96-8p, at 61 Fed. Reg. 34,475. "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'" *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, at 61 Fed. Reg. 34,476). The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 416.967 (defining the physical exertion requirements of each exertional level of work). "When a claimant has several impairments, including non-severe impairments, the administrative law judge must consider their cumulative effect in making a disability determination." *Britt*, 860 Fed. Appx. at 261 (citing 20 C.F.R. § 416.945(a)(2)); *accord Brown* v. *Commissioner, Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017); *Mascio*, 780 F.3d at 635. Concentration, persistence, and pace is one of these functional areas, and refers to the abilities of a claimant "to focus [their] attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1

7

§ 12.00(E)(3).[6] A "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation falls in the middle of a five-point rating scale between functioning that is "slightly limited" and "seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).

When formulating a residual functional capacity assessment, an ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 1996 WL 374184, at \*5 (holding that an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe," when assessing a claimant's residual functional capacity). While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR

---

[6] A listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1 is incorporated into the evaluation criteria for Supplemental Security Income Benefits. 20 C.F.R. § 416.925.

96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").

Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," *Mascio*, 780 F.3d at 636 (internal quotation marks and citation omitted), or where the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review," *Thomas*, 916 F.3d at 312.  Remand may also be appropriate where an ALJ finds an impairment to be non-severe at step two but then fails to consider its potential functional effects when assessing the claimant's residual functional capacity.  *E.g.*, *Janet L.* v. *Saul*, Civil Action No. CBD-19-2544, 2021 WL 1733469, at *7 (D. Md. Apr. 30, 2021) (remanding where "[a]lthough the Court found that the ALJ provided sufficient analysis to explain his conclusions that Plaintiff's impairments are non-severe at step two, the ALJ failed to consider Plaintiff's non-severe impairments throughout the sequential evaluation, as required by the Regulations").  An ALJ may assign persuasive value to a medical opinion that "provide[s] substantial support" for the ALJ's findings regarding claimant's concentration, persistence, or pace limitations.  *Sizemore* v. *Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017); *see also Chad P.* v. *Kijakazi*, Civil Action No. CDA-23-582, 2023 WL 8361629, at *3 (D. Md. Dec. 1, 2023).  When medical evidence demonstrates a claimant can perform simple, routine tasks, despite claimant's limitations, an ALJ may sufficiently account for the limitations by restricting the hypothetical question to the vocational expert to unskilled work.  *Shinaberry* v. *Saul*, 952 F.3d 113, 121 (4th Cir. 2020).

In assessing the residual functional capacity, the ALJ limited Plaintiff to "perform[ing] simple, routine, repetitive tasks . . . limited to occasional interaction with coworkers and supervisors and no interaction with the public."  ECF No. 8-3 at 27.  Plaintiff correctly notes that

the ALJ did not explicitly state how this residual functional capacity provision addresses Plaintiff's concentration, persistence, and pace limitations.  ECF No. 12 at 10–12.  But the Court disagrees that "it is unclear how the ALJ reached [their] conclusion[.]"  *Chad P.*, 2023 WL 8361629, at *3.  Specifically, the ALJ's reliance on the opinions of two medical sources in evaluating Plaintiff's residual functional capacity provides support for the concentration, persistence, and pace limitations and enables the Court to perform meaningful review.  *Sizemore*, 878 F.3d at 81.

The ALJ's conclusion that "simple, routine, repetitive tasks" adequately accounts for Plaintiff's limitation in concentration, persistence or pace is sufficiently supported by evidence in the record (ECF No. 8-3 at 28) and the State agency reviewing psychologists' determinations (ECF No. 8-3 at 30); *see also* ECF No. 8-4 at 7, 16 (explaining that Plaintiff would have some limitation in sustaining concentration and pace over extended periods on detailed tasks but retains the ability to complete simple tasks).  An ALJ is not required to discuss every piece of evidence of record or follow a particular format in conducting their analysis.  *Reid* v. *Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (noting that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision") (internal quotation marks and citation omitted).

The ALJ provides a narrative of Plaintiff's treatment history and emphasizes that, except for Plaintiff's October 2023 medication check appointment when Plaintiff "reported she had been lying about . . . and minimizing her symptoms," Plaintiff's symptoms have been well-managed by medication and therapy.  ECF No. 8-3 at 28–30.  The ALJ found Plaintiff's October 2023 assertion and hearing testimony regarding the "intensity, persistence and limiting effects of [her] symptoms" inconsistent with the objective medical records.  *Id.* at 28–30 (noting Plaintiff's medical records document normal mental health status exams and therapy notes do not include

any indication of symptom minimization).  The ALJ was not required to accept Plaintiff's allegations about her symptoms.  *Craig*, 76 F.3d at 595 ("claimant's allegations about [their] pain may not be discredited solely because they are not substantiated by objective evidence . . . [, but] they need not be accepted to the extent they are inconsistent with the available evidence").

Relying on the medical records, the ALJ explained that the State agency reviewing psychologists' opinions were more persuasive than Plaintiff's treating psychiatric nurse practitioner's medical source statement because their opinions were "well supported by the objective medical evidence that documents stable mental exams, improvement in symptoms when . . . [Plaintiff] takes her medications, and only infrequent reports of depression and/or anxiety symptoms."  *Id.*  The reviewing psychologists opined that when Plaintiff has anxiety around others and mood/PTSD symptoms, Plaintiff would be limited in "sustaining concentration and work pace over extended periods on detailed tasks."  ECF Nos. 8-4 at 7, 16.  By restricting Plaintiff to "limited to occasional interaction with coworkers and supervisors and no interaction with the public" and "simple, routine, repetitive tasks," the ALJ sufficiently addressed Plaintiff's limitations as opined by the reviewing psychologists.  ECF No. 8-3 at 27.

In *Mascio*, the Fourth Circuit concluded that by restricting the hypothetical question to the vocational expert to simple, routine tasks, the ALJ did not account for the claimant's concentration, persistence, and pace limitations.  780 F.3d at 638.  The Court of Appeals subsequently held that remand was appropriate, in part, because the ALJ failed to give any explanation as to why the claimant's moderate limitation in concentration, persistence, and pace did not result in a restriction in the residual functional capacity assessment.  *Id.* at 633 (finding the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace").  Here, unlike in *Mascio*, the ALJ assessed Plaintiff's symptoms, as well as objective medical evidence, medical opinions, and prior administrative

medical findings, and explained that the opinions of the State agency psychologists that Plaintiff could "meet the basic mental demands of competitive work on a sustained basis" were more persuasive.  ECF No. 8-3 at 30.  The ALJ did not ignore Plaintiff's concentration, persistence, and pace limitations.  Rather, the ALJ incorporated the psychologists' opinions that even with such limitations, Plaintiff can complete simple tasks. ECF Nos. 8-4 at 7, 16; 8-3 at 27, 30–31.

In *Shinaberry*, the Fourth Circuit determined that the ALJ's limitation in the residual functional capacity was sufficient because the ALJ explained why the psychological evidence and Shinaberry's statements supported the limitation and included the restriction in the hypothetical question posed to the vocational expert.  952 F.3d at 122.  Similarly, here, the ALJ explained why the reviewing psychologists' opinions were persuasive based on the evidence on record and included the restriction they opined regarding Plaintiff's concentration, persistence, and pace limitation in the hypothetical question posed to the vocational expert.  ECF No. 8-3 at 28–31, 205.

In considering the ALJ's discussion of Plaintiff's medical records and the reviewing psychologists' opinions, Plaintiff's argument equates to a request to reweigh the evidence. *David C.* v. *Bisignano*, Civil Action No. CDA-24-2247, 2025 WL 2172675, at *5 (D. Md. July 30, 2025) (concluding that the plaintiff's arguments were essentially a request to reweigh the evidence given the ALJ's discussion of the medical evidence relevant to plaintiff's mental impairments).  The Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ in reviewing for substantial error."  *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (internal quotation marks and citation omitted).  The undersigned therefore concludes that the ALJ's determination is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.  A separate Order follows.


Date:  March 2, 2026                                     /s/
                                                 Erin Aslan
                                                 United States Magistrate Judge